IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 11-cv-03292-MSK-BNB

EARL J. CLINTON,
ESTATE OF HEATHER E. CLINTON, deceased by R. GREGORY HALLER, Personal
Representative,
LARRY CLINTON, and
CHERYL CLINTON,

Plaintiffs,

v.

NATHAN CORDOVA,
KAREN HARRINGTON,
MAUREEN COOPER,
JOHN DOES #1-5,
JANE DOES #1-5,
MARK PERKINS,
SEAN HAUSER, and
JOSE A. DOMINGUEZ,

Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Referred to me for consideration is the **Joint Motion to Dismiss Complaint Under**

**Federal Rule of Civil Procedure 12(b)(6) of Defendants Nathan Cordova, Karen**

**Harrington, Maureen Cooper, and Mark Perkins** [Doc. # 27, filed 3/26/2012] (the "State

Defendants' Motion to Dismiss").  I respectfully RECOMMEND that the State Defendants'

Motion to Dismiss [Doc. # 27] be GRANTED; the First Claim for Relief, alleging a violation of

due process under the Fourteenth Amendment, be dismissed with prejudice; and defendants

Nathan Cordova, Karen Harrington, Maureen Cooper, and Mark Perkins (the "State

Defendants") be dismissed from the action.

## I.  Background

The Complaint [Doc. # 1] alleges a single cause of action against the State Defendants

under 42 U.S.C. § 1983 for "violation of [the plaintiffs'] civil rights and denial of . . . substantive

due process" guaranteed by the Fourteenth Amendment to the United States Constitution.  Id. at

¶28.  The claim arises from alleged misconduct by the State Defendants in failing to timely

dispatch a Colorado State Patrol car to the scene of an automobile accident that occurred on

Interstate 25 on December 17, 2009, at approximately 1:35 a.m.  The State Defendants move to

dismiss the Complaint for failure to state a constitutional violation.

## II.  Alleged Facts

The factual allegations of the Complaint include the following:

> 15.  On December 17, 2009, at approximately 1:35 a.m., Defendant
> Jose Dominguez was operating a Mazda 3 sedan southbound on
> Interstate 25 . . . when the vehicle collided with an animal,
> disabling the vehicle in the right travel lane of Interstate 25,
> without power or lights or flashers.

> 16.  On December 17, 2009 at approximately 1:50 a.m., Heather
> Clinton was operating a 1995 Ford Explorer southbound on
> Interstate 25 in El Paso County in the right lane at a lawful speed
> when she came upon the vehicle of Defendant Jose Dominguez
> which was disabled in the right traffic lane without lights or
> flashers.  Ms. Clinton swerved to avoid a collision with the
> Dominguez vehicle and, in the process, lost control of her vehicle,
> rolling it multiple times into the median.  Both Ms. Clinton and her
> passenger, Plaintiff Earl J. Clinton, were ejected from the vehicle
> during the rollover.  Ms. Clinton received fatal injuries.  Plaintiff
> Earl Clinton sustained serious and disabling injuries including
> head injury, brain injury, broken jaw, broken ribs, broken right
> clavicle, fractured vertebrae and resulting traumatic brain injury.

17.  At 1:37 a.m. on December 17, 2009, thirteen minutes before Heather Clinton came upon the Dominguez vehicle, the Pueblo Regional Communications Center received a call from Defendant Sean Hauser, a passenger in the Dominguez vehicle, to "*CSP", answered by Defendant Nathan Cordova reporting a collision between a vehicle and a deer that had just occurred on Interstate 25. . . .  Defendant Hauser reported to Defendant Cordova that, as a result of the collision, the vehicle was disabled and stopped on the roadway in the right lane without lights or flashers.

18.  Defendant Cordova sent the Hauser call via CAD to Defendant Harrington at the Troop 2B radio console and also gave a verbal "shout out" regarding the crash report.  After waiting several minutes with no responsive action from Defendant Harrington, Defendant Cordova gave another "shout out" to Defendant Harrington, again with no response from Defendant Harrington.  Defendant Cordova failed to make physical or personal contact with Defendant Harrington or to determine if she was even at her dispatch post.

19.  During the time of these calls and communications, Defendant Harrington had intentionally and purposely abandoned her post and was in the break room watching a Christmas movie along with Defendant Mark Perkins, who had also abandoned his post to pursue the diversion.

20.  When no response to the hand off had occurred, Defendant Cordova then consulted with Defendant Maureen Cooper, who directed Defendant Cordova to send another CAD call to Defendant Harrington updating the crash to indicate that the disabled vehicle was a traffic hazard.

21.  During the elapsed time with no contact or dispatch response from sector Troop 2B, Defendant Hauser again called the Pueblo Regional Communications Center, advising Defendant Cordova that the Dominguez vehicle was disabled, without lights, in the right traffic lane and was a traffic hazard to the drivers on southbound Interstate 25.

22.  Not until 1:46 a.m. did Defendant Cordova finally directly speak with Defendant Harrington and only then asked about the status of dispatching a CSP Trooper to the scene of the Dominguez vehicle.  In response, Defendant Harrington finally dispatched a CSP Trooper to the scene of the disabled Dominguez vehicle and

also finally spoke with Defendant Hauser by phone during which
conversation, at approximately 1:50 a.m., the sounds of the Clinton
vehicle braking and rolling could be heard.

23.  The CSP Trooper who was finally dispatched to the scene at
1:46 a.m. by Defendant Harrington arrived at the scene at
approximately 1:53 a.m., approximately 7 minutes after he was
dispatched.

24.  Had the CSP Trooper been dispatched by Defendant
Harrington in the time and sequence for position with sector Troop
2B, a CSP Trooper would have been on the scene of the disabled
Dominguez vehicle with flashing warning and hazard lights at least
5 minutes before Heather Clinton arrived at the disabled vehicle . .
., such that Heather Clinton would not have bed to employee the
extreme evasive maneuver to avoid the unlit Dominguez vehicle.

Complaint [Doc. # 1] at ¶¶15-24.

The Complaint alleges that this conduct by the State Defendants was reckless based on

the following:

a.  Because Defendant Cordova and Defendant Harrington
maintained an antagonistic working relationship, Defendant
Cordova misused his power as a Colorado State Patrol
Communications Officer . . . when he deliberately and
intentionally refused to take any measure to locate and find
Defendant Harrington to timely dispatch a Colorado State Trooper
to the emergency scene. . . .

b.  Defendant Cordova misused his power as a Colorado State
Patrol Communications Officer . . . when he deliberately and
intentionally refused to timely dispatch a Colorado State Trooper
to the emergency scene.

c.  Defendant Harrington misused her power as a Colorado State
Communications Officer when she deliberately and intentionally
abandoned her dispatch post, leaving the traveling public,
including the Plaintiffs, at substantial risk of serious, immediate
and proximate harm.

d.  Defendant Cooper, as the supervisor on duty, knew at all times
that Defendant Harrington had abandoned her post and misused

4

her power as a Colorado State Patrol Communications Officer when she deliberately and intentionally failed to locate and contact Defendant Harrington to respond to the need for a Trooper dispatch, and/or deliberately and intentionally failed to take over Defendant Harrington's sector in order to dispatch the Trooper to the scene of the disabled Dominguez vehicle. . . .

e.  Defendant Perkins misused his power as a Colorado State Patrol Communications Officer when he deliberately and intentionally abandoned his dispatch post to engage in entertainment and, knowing that Defendant Harrington was on duty for dispatch to her sector, lured Defendant Harrington away from her post and into his entertainment so that she would not return to her post. . . .

Id. at ¶¶30(a)-(e).

### III.  Standard of Review

The plaintiffs bear the burden of pleading facts sufficient "to state a claim for relief that is plausible on its face" in order to survive a motion to dismiss.  Khalik v. United Air Lines, 671 F.3d 1188, 1190 (10th Cir. 2012)(internal citations and quotations omitted).  In reviewing a complaint under Rule 12(b)(6), Fed. R. Civ. P., a court should accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiffs.  Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009).  Conclusory allegations, however, are not entitled to the assumption of truth.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  Finally, a court should not "conjure up unpleaded facts that might turn a frivolous claim . . . into a substantial one."  Robbins v. Oklahoma, 519 F.3d 1242, 1252 (10th Cir. 2008)(internal quotation and citation omitted).

The due process claim against the State Defendants is brought under 42 U.S.C. §1983, which provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be

subjected, any citizen of the United States or other person within the jurisdiction thereof to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall

be liable to the party injured in an action at law, suit in equity, or other proper proceeding for

redress. . . ."  To assert a claim under section 1983, the plaintiffs must show (1) that they had a

right secured by the Constitution and laws of the United States that was violated (2) by a person

who acted under color of state law.  Hall v. Witteman, 584 F.3d 859, 864 (10th Cir. 2009).

## IV.  Analysis

The plaintiffs claim that they were denied substantive due process under the Fourteenth

Amendment to the United States Constitution.  "When an alleged constitutional violation is

denial of substantive or procedural due process, the Plaintiff must identify the specific right of

which he or she was deprived."  Lowman v. City of Aurora, 2012 WL 1269131 at *2 (D. Colo.

April 16, 2012).  The particular right at issue in this case is not specifically identified in the

Complaint.  In their Response [Doc. # 33], however, the plaintiffs indicate that they assert a

"case of violation of substantive due process based on the 'danger creation' theory of

constitutional liability. . . ."  Id. at p. 2.

In DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189 (1989), the

Supreme Court held that "a State's failure to protect an individual against private violence

simply does not constitute a violation of the Due Process Clause," reasoning:

> [N]othing in the language of the Due Process Clause itself requires
> the State to protect the life, liberty, or property of its citizens
> against invasion by private actors.  The Clause is phrased as a
> limitation on the State's power to act, not as a guarantee of certain
> minimal levels of safety and security.  It forbids the State itself to
> deprive individuals of life, liberty, or property without "due
> process of law," but its language cannot fairly be extended to
> impose an affirmative obligation on the State to ensure that those

6

> interests do not come to harm through other means. . . .  Its
> purpose was to protect the people from the State, not to ensure that
> the State protected them from each other. . . .
>
> Consistent with these principles, our cases have recognized that the
> Due Process Clauses generally confer no affirmative right to
> governmental aid, even where such aid may be necessary to secure
> life, liberty, or property interests of which the government itself
> may not deprive the individual.

Id. at 195-96.

In Uhlrig v. Harder, 64 F.3d 567 (10th Cir. 1995), the Tenth Circuit Court of Appeals

reviewed the Supreme Court's decision in DeShaney and noted that there are two recognized

exceptions to the rule that state actors are not liable for acts of private violence: "(1) the special

relationship doctrine; and (2) the 'danger creation' theory."  Id. at 572.  A special relationship

exists when "the state assumes control over an individual sufficient to trigger an affirmative duty

to provide protection," such as a prisoner or an involuntarily committed mental patient.  Id. With

one fleeting and futile exception, see n. 2 infra, the plaintiffs do not allege the existence of a

special relationship.

"A state also may be liable for an individual's safety under a 'danger creation' theory if it

created the danger that harmed that individual--that is, provided that the other elements of a §

1983 claim have been satisfied."  Uhlrig, 64 F. 3d at 572.  According to the circuit court:

> The classic case of state actors creating a danger so as to give rise
> to § 1983 liability is Wood v. Ostrander, [879 F.2d 583, 589-90
> (9th Cir. 1989)], where police officers placed plaintiff in danger by
> impounding her car and abandoning her in a high crime area at
> 2:30 a.m., thereby "distinguishing Wood from the general public
> and triggering a duty of the police to afford her some measure of
> peace and safety."
>
> However, many state activities have the potential for creating some
> danger--as is true of most human endeavors--but not all such

activities constitute a "special" danger giving rise to § 1983
liability.  For the state to be liable under § 1983 for creating a
special danger (i.e. where a third party other than a state actor
causes the complained of injury), a plaintiff must allege a
constitutionally cognizable danger. That is, the danger creation
theory must ultimately rest on the specifics of a substantive due
process claim--i.e. a claim predicated on reckless or intentionally
injury-causing state action which "shocks the conscience. . . ." [I]t
is not enough to show that the state increased the danger of harm
from third persons; the § 1983 plaintiff must also show that the
state acted with the requisite degree of culpability in failing to
protect the plaintiff.

Id. at 572-73.

Recently, in Gray v. University of Colorado Hosp. Authority, 672 F.3d 909 (10th Cir.

2012), the circuit court exhaustively reviewed the law of this circuit concerning the danger

creation theory.  It reiterated the six elements necessary to establish liability under the danger

creation theory as follows:

When a plaintiff alleges a danger was created by the defendant, the
plaintiff must demonstrate that 1) plaintiff was a member of a
limited and specifically definable group; 2) defendant's conduct
put plaintiff at substantial risk of serious, immediate, and
proximate harm; 3) the risk was obvious or known; 4) defendant
acted recklessly in conscious disregard of that risk; . . . 5) such
conduct when viewed in total, is conscience shocking; and 6)
defendant . . . created the danger or increased the plaintiff's
vulnerability to the danger in some way.

Id. at 920 (internal quotation and citations omitted).

The circuit court explained, in addition, that "a precondition to our application of the

state-created danger theory is an act of 'private violence.'" Id. at 927.  Specifically:

[A] private act must directly cause the victim's harm before we
even so much as consider the state-created danger theory.

But not just any private act will suffice.  The private act must be a
violent one.  Black's defines violence as, among other things,

8

"physical force unlawfully exercised with the intent to harm."
Black's Law Dictionary 1705 (9th ed. 2009). *At the very least*, the
term "violence" in its legal sense typically connotes an act
involving some degree of deliberateness. The view that a private
party must act with some degree of deliberateness before a
victim's harm is actionable under the state-created danger theory is
sound. This is because the harm associated with a negligent act is
never constitutionally cognizable under the Due Process Clause.

* * *

In other words, *regardless of the circumstances preceding the act*,
a negligent act that is directly responsible for causing harm to the
victim never constitutes a substantive due process violation
because such an act never constitutes a constitutional deprivation
of life, liberty, or property. Reason dictates that if state actors are
not answerable under § 1983 for their *own* negligent acts, they are
not answerable under § 1983 where a private party's underlying
negligent act is directly responsible for the harm. The rationale is
simple: The victim has not suffered a constitutional deprivation in
either case.

Id. at 929 (original emphasis)(internal citations omitted except as indicated).

The only allegations against the private party defendants in this case are for negligence.

Complaint [Doc. # 1] at pp. 10-11. Consequently, the State Defendants point to Gray and to the

absence of any alleged act of "private violence" in support of their motion. State Defendants'

Motion to Dismiss [Doc. # 27] at p. 7. The plaintiffs did not respond to the argument. I agree

with the State Defendants that the plaintiffs have failed to allege facts supporting the private

violence requirement necessary to state a claim for relief under the danger creation theory of liability.[1]

The plaintiffs also allege liability against the State Defendants based on the state created danger theory because the State Defendants "repeatedly assured" defendant Sean Hauser, a passenger in the disabled Mazda into which the plaintiffs crashed, "that a [Colorado State Patrol] Trooper was being dispatched to the scene," and made "false promises . . . of prompt and immediate assistance" that "effectively restrained Defendants Dominguez and Hauser from taking matters into their own hands to move their disabled vehicle from the right lane of the highway. . . ." Complaint [Doc. # 1] at ¶¶31-32. These allegations also are inadequate to state a constitutional claim because false assurances of assistance from state actors "do not constitute affirmative conduct sufficient to invoke the state-created danger theory of constitutional liability." Gray, 672 F.3d at 925.[2]

The plaintiffs have failed to allege facts necessary to state a claim for a violation of the Due Process Clause based on the state created danger theory. Consequently, the First Claim for

---

[1]The failure to state a constitutional violation does not mean that the plaintiffs necessarily are without any remedy. Under appropriate circumstances, state actors may be liable in tort for injuries proximately caused by their misconduct. And, of course, the plaintiffs may have a remedy against the private parties whose negligence was the direct cause of their injuries.

[2]The plaintiffs allege in the Complaint the existence of a "special relationship" created by the repeated assurances of help. Complaint [Doc. # 1] at ¶32. They do not argue the existence of a special relationship in their Response [Doc. # 33], however. Nor would a special relationship claim be viable under the facts presented here. In particular, the circuit court in Gray held that "it is the State's *affirmative act* of restraining the individual's freedom to act on his own behalf--through incarceration, institutionalization, or other similar restraint of personal liberty--which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, *not its failure to act* to protect his liberty interest against harms inflicted by other means." 672 F.3d at 916 (original emphasis).

Relief should be dismissed.  Ellis v. Ogden City, 589 F.3d 1099, 1102 (10th Cir. 2009).

The plaintiffs allege supervisory liability against defendant Maureen Cooper.  Complaint [Doc. # 1] at ¶30(d).  Supervisory liability requires (1) an underlying constitutional violation by a subordinate and (2) the supervisor's personal direction or actual knowledge and acquiescence in the violation.  J.W. v. Utah, 647 F.3d 1006, 1012 (10th Cir. 2011); Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006).  A claim for supervisory liability cannot survive where, as here, the underlying constitutional violation is not sufficiently alleged.

I respectfully RECOMMEND:

(1)     The State Defendants' Motion to Dismiss [Doc. # 27] be GRANTED;

(2)     The First Claim for Relief, alleging a violation of due process under the Fourteenth Amendment, be dismissed with prejudice; and

(3)     Defendants Nathan Cordova, Karen Harrington, Maureen Cooper, and Mark Perkins be dismissed from the action.[3]

---

[3]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives de novo review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  Makin v. Colorado Dept. of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated June 19, 2012.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge